IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2010 Session

## CRAIG E. SHEARS v. STATE OF TENNESSEE

Appeal from the Criminal Court for Knox County
No. 85297    Bob R. McGee, Judge

No. E2008-02726-CCA-R3-PC - Filed June 21, 2010

The Petitioner, Craig E. Shears, filed a petition for post-conviction relief attacking his conviction of first degree murder on the basis of ineffective assistance of trial counsel. Following an evidentiary hearing, the post-conviction court denied relief based upon its finding that the Petitioner had failed to prove his allegations by clear and convincing evidence. In this appeal as of right, the Petitioner contends that trial counsel was ineffective in failing to effectively argue a motion to suppress his statement and in preparing for trial. The Petitioner also contends that co-counsel was ineffective in failing to request a continuance when co-counsel was hired to assist trial counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Leslie M. Jeffress, Knoxville, Tennessee, attorney for appellant, Craig E. Shears.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Takisha Fitzgerald, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

### OPINION

A Knox County jury convicted the Petitioner of first degree felony murder and especially aggravated robbery. The trial court imposed a sentence of life imprisonment for the first degree felony murder conviction and a concurrent twenty-year sentence for the especially aggravated robbery conviction. On direct appeal, the Petitioner challenged the

trial court's denial of the motion to suppress his statement and the sufficiency of the evidence; this court affirmed the trial court's ruling and the Petitioner's conviction. State v. Craig Everett Shears, No. E2004-00797-CCA-R3-CD, 2005 WL 2148625 (Tenn. Crim. App. Sep. 7, 2005).

Although the facts of the Petitioner's case have already been discussed in this court's opinion affirming the convictions, we will provide the following factual summary to establish context for the Petitioner's issues on appeal. See id. The Petitioner was a student at Knoxville College, and when the fall semester ended on December 19, 1998, he was required to vacate the campus dormitories. After leaving the dormitories, the Petitioner went to the Expo Inn, where he stayed with some friends for the night. He intended to travel to his hometown, Homewood, Illinois, the next morning. On the morning of December 20, 1998, he went downstairs to the Expo Inn lobby with Shawn Bough to rob the clerk, Mr. Oldham, at the front desk. According to the Petitioner, he had agreed to watch the door as Mr. Bough robbed the clerk. He did not know that Mr. Bough intended to shoot Mr. Oldham, and when Mr. Bough shot Mr. Oldham several times, the Petitioner ran out of the motel lobby and got into a car driven by a friend, Dante Smith. Mr. Smith did not know that the Petitioner and Mr. Bough had just robbed the victim. The victim was shot three times and ultimately died as a result of internal bleeding. Later that day, Mr. Bough and the Petitioner traveled together to Chicago, Illinois. On March 24, 1999, the Petitioner was interviewed by investigators in Homewood, Illinois. These investigators traveled from Knoxville, Tennessee, to discuss the Expo Inn case with the Petitioner.

After his convictions were affirmed on appeal, on September 7, 2006, the Petitioner filed a timely petition for post-conviction relief. On June 7, 2007, the Petitioner filed an amended petition for post-conviction relief alleging that his conviction was the result of the ineffective assistance of trial counsel.

At the evidentiary hearing, the Petitioner testified that trial counsel provided him with copies of the discovery and his confession, but she only came to see him five times. She ignored his contention that he was denied the opportunity to speak with his aunt and only argued at the suppression hearing that the confession was the result of a coercive police interrogation. The Petitioner believed that trial counsel was not prepared for trial because she was only planning on calling character witnesses to attest to the Petitioner's good character.

Approximately two weeks before trial, the Petitioner told his parents to hire co-counsel to assist trial counsel. Co-counsel was hired, and in one of their first meetings, co-counsel told the Petitioner that trial counsel was not prepared for the trial. The Petitioner asked if his case could be continued to allow co-counsel time to prepare the case for trial.

-2-

Co-counsel told him that it would be impossible to obtain a continuance because the Petitioner's case had already been continued more than once.

On cross-examination, the Petitioner admitted that the tape-recorded statement did not reflect that he ever asked to speak with his aunt, who was a civil attorney. The Petitioner contended that his request to speak to his aunt occurred when the tape-recorder was not recording the conversation. The Petitioner also stated that contrary to what appears in the statement, he was never allowed to use the bathroom. The Petitioner conceded that the investigators read the Miranda waiver form to him and that he signed the form before giving his statement.

Although there were not any factual disputes in his case, he believed that there were several witnesses who could have testified that would have helped his case. He believed that Mr. Bough should have testified on his behalf and that the victim's statements regarding the identity of the shooter were beneficial. The Petitioner admitted that Mr. Smith, another potentially beneficial witness, had testified at trial and that the victim's testimony was also presented to the jury through the 9-1-1 tape and Investigator A.J. Loeffler's testimony.

The Petitioner admitted that trial counsel and co-counsel met with him prior to trial and that they discussed his case with him and explained the charges. He also admitted that he signed a letter rejecting the plea offer from the State even though his attorneys advised him to accept the offer. However, he insisted that he was forced to sign the letter.

On redirect examination, the Petitioner stated that Investigator Dwight Loop told him that the Petitioner could call his aunt and that Investigator Loop would talk to her. He believed that Investigator Loop was offering to talk to his aunt and that he was not allowed to speak with her. He only asked to speak to his aunt when he started to get an "inkling" that something was wrong.

Eileen Letts, the Petitioner's aunt, testified that she spoke with the Petitioner at the police station after the Petitioner's mother called her and asked her to go see the Petitioner. She did not know whether she talked to the Petitioner before or after he was interrogated. When she talked to the Petitioner, she did not know any of the facts of the case because the Petitioner "never really told [her] why he was there." The Petitioner did not ask for any legal advice, and if the Petitioner had asked for legal advice, she would not have given him any legal advice because she was a civil attorney. If the Petitioner had asked her whether he should talk to the investigators, she would have said, "You need a lawyer, and not me."

Craig Shears Sr., the Petitioner's father, testified that trial counsel gave him updates on the progress of the Petitioner's case, but he "lost contact" with her when she got sick.

Trial counsel "shied away from telling [him] certain things," and he "didn't feel comfortable with her representing [the Petitioner] after a while." Trial counsel had "a reserved attitude" about the Petitioner's case, and "she left the impression that maybe she wouldn't probably be the best attorney for the case."

Mr. Shears was present for the suppression hearing, and he recalled that "one reason [that trial counsel was] trying to suppress the statement" involved the Petitioner's request for an attorney. He remembered that the investigators told the Petitioner that "he didn't need an attorney." When he spoke with the Petitioner after the interrogation at the police station, the Petitioner told him that the Petitioner asked the investigators if he could talk to his aunt and that the investigators told the Petitioner that calling his aunt "wasn't necessary."

On cross-examination, Mr. Shears said that he had more confidence in co-counsel than he did in trial counsel. He said that "for the time that [co-counsel] had, [he] thought [co-counsel] did about as good a job as [he] could ask him." On redirect examination, Mr. Shears stated that he talked with trial counsel about the possibility of her withdrawal when she became sick but that they did not decide on an actual deadline for her withdrawal. When co-counsel was retained "less than two weeks before the trial," trial counsel was "kind of resistant" to the addition of co-counsel. He believed that co-counsel "seemed to get right on things" and that co-counsel was "more thorough."

Co-counsel testified that he was retained approximately eleven or twelve days before the Petitioner's trial. He believed that trial counsel had not "grasped the reality of the charge;" that trial counsel "had taken an approach that we quickly changed;" that trial counsel "spent very little, if any, time with [the Petitioner];" and that trial counsel should have stressed the importance of accepting the plea agreement. Trial counsel's "focus was not on the evidence" because she was more concerned with presenting character evidence regarding the Petitioner's "background, his upbringing, [and] his going to church."

Co-counsel tried to "focus on what the evidence would be and what to do about [the evidence]." He started to meet with the Petitioner, and he believed that the Petitioner started to trust his advice. He stated that every lawyer "always need[s] more time" when trying a case and that in this case specifically, he needed time to prepare the Petitioner for testifying. He believed that "had there been more time perhaps [the Petitioner] would have been more comfortable and not as uptight." The Petitioner was not able to effectively convey his remorse because he "appeared to be cold" when he was actually just not prepared to testify.

Co-counsel admitted that he did not talk to the witnesses before the trial. However, he insisted that it was his "style" to not interview potential State witnesses and that if he needed to see what a witness was going to say, he would send an investigator to talk to them.

-4-

He said that it was better to "not have [the witnesses] know what [he's] going to do at trial" and that, in this case, the witnesses "didn't surprise us by what they said" anyway.

Co-counsel said that he reviewed the suppression issue and that he felt that trial counsel did not handle the suppression issue "in the proper way." However, he told the Petitioner that they had to focus on the other issues in the Petitioner's trial because that issue had "been lost."

Co-counsel did not seek a continuance in the Petitioner's case because he "was told that it wouldn't be granted, that [he] was being brought in to assist." He believed that the trial court "was not going to give a continuance to the primary attorney that had been on [the case] all of that time." He regretted his involvement in the Petitioner's case because he believed that had he not participated, the Petitioner would have been granted a new trial based on an ineffective assistance of trial counsel claim. Trial counsel was only "prepared to give a sermon like you would at church," and "[s]he was not prepared to conduct [the Petitioner's] trial."

He believed that he was ineffective for even going to trial when the case was "a slam dunk for the State." When he was hired to assist trial counsel, one plea agreement had been offered by the State and rejected by the Petitioner. After he talked with the State's attorney, they were offered another plea agreement with a longer sentence. He believed that they did not have enough time to talk the Petitioner into accepting the offer.

On cross-examination, he admitted that "the rules of ethics say that [accepting a plea agreement] is the client's final decision." However, he believes that "the lawyer should do everything they can" to convince their client to accept the plea agreement when they do not have a chance at winning the trial. He said that he and trial counsel sent the Petitioner a letter regarding the plea agreement and that the letter stated that the Petitioner was "made aware that we would probably not prevail at trial" before deciding to go forward with a trial.

Co-counsel admitted that the Petitioner's case was not complicated. He did not believe there was any chance that the Petitioner would be found guilty of first degree premeditated murder; however, the Petitioner had already admitted to felony murder in his recorded statement. He believed that if the Petitioner were sympathetic on the stand, he might be able to secure a conviction for facilitation instead of felony murder. Mr. Smith's testimony was not helpful in that regard even though the Petitioner believed that his testimony was helpful for the defense. Co-counsel believed that he was ready for trial in terms of presenting the facts but that his presentation of the case was inadequate.

On re-direct examination, co-counsel stated that he was allowed to meet with the Petitioner at the jail "as long as [he] wanted" because he obtained special approval from the trial court. The first time he met with the Petitioner and trial counsel, trial counsel handed the Petitioner a "script." Trial counsel did not attend their meetings again and was really upset by his involvement. Trial counsel sat "with her back to [the Petitioner] with the jury observing [her behavior]" at trial. He stated that at first, trial counsel was "going to be doing about 80 percent" of the trial but that he ended up handling most of the trial because that is what the Petitioner wanted.

Investigator A.J. Loeffler of the Knoxville Police Department testified that he was the lead investigator in the Petitioner's case. He stated that the Petitioner was never out of his sight once he was brought to the Homewood Police Department. The Petitioner agreed to make a statement after he was informed of and waived his Miranda rights. The Petitioner never asked for his aunt, and Investigator Loop never said, "If you call your aunt, all bets are off."

On cross-examination, Investigator Loeffler said that the Petitioner told them that his aunt was an attorney. The Petitioner informed them that he had already spoken to his aunt. He admitted that Investigator Loop asked the Petitioner to confirm that he was given an opportunity to speak with his aunt but that he did not remember this exchange.

Following the evidentiary hearing, the post-conviction court denied relief on November 19, 2008. In its written order denying the petition for post-conviction relief, the trial court found that trial counsel was not ineffective for failing to allow the Petitioner to testify at the suppression hearing that he asked to call his aunt because the Petitioner never invoked his right to counsel. The trial court further found that co-counsel acted as trial counsel and actually presented the case at trial and that the Petitioner did not claim that co-counsel was ineffective at trial. The trial court acknowledged co-counsel's assertion that trial counsel should have convinced the Petitioner to accept the plea agreement but stated that trial counsel's failure to secure a plea agreement was not ineffective assistance of counsel.

## ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegation to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves his grounds by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates

against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In determining whether trial counsel's performance was deficient, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "[D]eference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

I. Motion to Suppress

The Defendant contends that trial counsel was ineffective because she neglected to argue that the Petitioner invoked his right to counsel during the interrogation and only argued that the confession was a result of coercive police interrogation. The State responds that the Petitioner never actually invoked his right to counsel; therefore, trial counsel was not deficient in omitting this assertion from her motion to suppress. To prevail, the Petitioner must establish that his right to counsel was violated and that trial counsel failed to pursue the issue in her motion to suppress.

Both the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution protect a person against compelled self-incrimination. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Specifically, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. A defendant may waive those rights, but such waiver must be made "voluntarily, knowingly and intelligently." Id. The State has the burden of proving the waiver by a preponderance of the evidence. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997).

"Encompassed within [the protection against self-incrimination] is the right to counsel, which is applicable whenever a suspect requests that counsel be present during police-initiated custodial interrogation. When a suspect invokes that right to counsel, police must cease questioning until counsel is present." State v. Saylor, 117 S.W.3d 239 (Tenn. 2003) (citations and footnote omitted). In Saylor, our supreme court held,

> The standard for a valid invocation of the right to counsel is the same under both [a]rticle I, [s]ection 9 [of the Tennessee Constitution] and the Fifth Amendment. The accused must articulate his desire to have counsel present sufficiently clearly that a reasonable [police] officer . . . would understand the statement to be a request for an attorney. If the suspect fails to make such an unambiguous statement, police may continue to question him without clarifying any equivocal requests for counsel.

Saylor, 117 S.W.3d at 246 (internal citations and quotations omitted); see Davis v. United States, 512 U.S. 452, 459-61 (1994); State v. Huddleston, 924 S.W.2d 666, 670 (Tenn. 1996). "Whether the [accused made] an equivocal or unequivocal request for an attorney is a question of fact" determined by the trial court. State v. Farmer, 927 S.W.2d 582, 594 (Tenn. Crim. App. 1996).

We first note that the full direct appeal record was not included in the record on appeal. A copy of trial counsel's motion to suppress the confession and a transcript of the Petitioner's interrogation were included in the record. Moreover, this court on appeal may take judicial notice of the earlier direct appeal record. State ex rel. Wilkerson v. Bomar, 376

S.W.2d 451, 453 (Tenn. 1964). We have reviewed the transcript of the Petitioner's interrogation and the transcript of the suppression hearing.

In the Petitioner's confession, the Petitioner classified his aunt as a civil attorney and told the investigators that he had already spoken with her. He did not ask to speak with her during the interrogation. Ms. Letts testified at trial that she spoke with the Petitioner at the police station and that the Petitioner never told her about his case. Trial counsel argued at the suppression hearing that the Petitioner's confession was a result of coercive police interrogation. While the investigators were questioned regarding the Petitioner's request to use the telephone and his pre-interview conversation with Ms. Letts, trial counsel did not argue that the Petitioner invoked his right to counsel. In denying trial counsel's motion, the trial court ruled that the confession was not the result of coercive police interrogation and also stated, "[The Petitioner] knew he had the right to consult counsel if he chose to do so, and he chose not to do so . . . ."

While we agree with the Petitioner that trial counsel did not argue at the suppression hearing that the Petitioner invoked his right to counsel, the trial court and the post-conviction court found that he did not request to speak with an attorney. As previously noted, the post-conviction court's findings discussed the Petitioner's alleged request to speak with his aunt who is an attorney. The post-conviction court found that the Petitioner did not "unequivocally assert his right to talk to a lawyer." The transcript of the interrogation indicated that he spoke to his aunt but did not contain any request to speak to his aunt during the interrogation. Following our review, we conclude that the record does not preponderate against the post-conviction court's finding that the Petitioner failed to show by clear and convincing evidence that he invoked his right to counsel. Accordingly, we also conclude that the Petitioner has failed to prove that trial counsel was ineffective in her representation at the suppression hearing.

## II. Inadequate Preparation

The Petitioner contends that trial counsel was deficient in her preparation for trial because she did not prepare a "strategy or tactic which could realistically have produced anything but a guilty verdict." The State responds that the Petitioner has failed to articulate how trial counsel was deficient and that the Petitioner cannot prove that he was prejudiced by any alleged deficiency.

In determining whether trial counsel was deficient, her performance must be measured against the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In analyzing this issue, we must first note that co-counsel was hired because the Petitioner and his family believed that trial counsel was not prepared. We also acknowledge that co-counsel believed that trial counsel was not prepared and that he presented the majority of the case because of this belief. However, co-counsel also stated that this was not a difficult case and that he was prepared to present the case at trial even though his presentation of the case may not have been up to his personal standard of effectiveness. Additionally, the Petitioner has failed to show what trial counsel should have done differently. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Accordingly, we conclude that the Petitioner has failed to prove that he was prejudiced by trial counsel's inadequate preparation.

### III. Motion to Continue

The Defendant contends that co-counsel was ineffective for failing to file a motion to continue the case because he had less than two weeks to prepare the case for trial. The Defendant also contends that co-counsel's involvement in the case caused a "rift" between co-counsel and trial counsel and that this "rift" could have been alleviated with time, allowing the parties more time to convince the Petitioner to accept the plea agreement. The State responds that the Petitioner has failed to show why a continuance was necessary and that the record does not indicate how more time would have benefitted the Petitioner's case given that co-counsel was hired to assist trial counsel and not replace her.

We first note that the Petitioner does not cite any legal authority in support of his position. There are specific requirements regarding the content of briefs presented to the appellate courts. See Tenn. R. App. P. 27. Furthermore, this court's rules provide that inadequate briefs may be stricken with the imposition of costs to the party responsible for the filing of a brief that does not comply with the Tennessee Rules of Appellate Procedure. Tenn. Ct. Crim. App. R. 10(a). Similarly, the same rule allows this court to treat as waived any issues that "are not supported by argument, citation to authorities, or appropriate references to the record." Tenn. Ct. Crim. App. R. 10(b).

The Petitioner appears to argue that if he had more time to think about his case, he would have been persuaded to plead guilty. Similarly, co-counsel stated that if he had more time, he would have tried harder to persuade the Petitioner to accept the plea agreement. Co-counsel told the Petitioner that he could not win at trial, and the Petitioner chose to go forward against counsel's advice. The Petitioner even signed a statement acknowledging that he wanted to proceed with trial even though both of his attorneys recommended that he accept the plea agreement.

We acknowledge that co-counsel admitted that more time would have been beneficial to prepare the Petitioner for his testimony and present the case in general. However, co-counsel stated that he was ready in terms of presenting the evidence because he rarely interviews State witnesses in preparation for trial. The Petitioner does not allege that co-counsel was inadequate in his preparation or that more time would have allowed co-counsel to discover or interview witnesses. Accordingly, we conclude that the Petitioner has failed to show how he was prejudiced by co-counsel's failure to ask for a continuance.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE